G. Wayne Greathouse, Interim Executive Director Arkansas Teacher Retirement System 1400 W. Third Street Little Rock, AR 72201
Dear Director Greathouse:
I am writing in response to your request for my opinion on the following question:
 Does the Arkansas Teacher Retirement System ("ATRS") have authority to legally indemnify members of its Real Estate Committee against legal liability for errors and omissions committed in the regular scope of their duties assuming that such indemnification specifically provides that there will be no indemnity for possible liability of Real Estate Committee members to the System itself?
You report that the ATRS Board of Directors (the "Board") has historically consulted with a professional real estate advisor. However, because of the increasing complexity of ATRS real estate investments, the Board has recently formed a seven-member Real Estate Committee (the "Committee"), chaired by the advisor. Although the Committee was initially to be charged with final decision-making authority on all matters relating to ATRS real-estate investments, concerns about potential personal liability of the Committee members prompted the Board to authorize the Committee only to advise the ATRS Investment Committee, comprised of Board members, which reportedly makes all final real-estate investment decisions. Notwithstanding this limitation, certain Committee members apparently remain concerned about their potential personal exposure to suit. According to your factual summary, the Board has determined that the cost of an errors-and-omissions insurance policy on Committee members would be prohibitive, prompting you to ask whether the Board might simply agree to indemnify Committee members against any liability to third parties. Finally, you have informed me that the Committee members receive a "modest honorarium" in recognition of their service.
RESPONSE
Before addressing the issue of indemnification, I should address the question of whether the Board had the authority to form the Committee in the first place. The Board's own existence is clearly authorized by Act 427 of 1973, which is currently codified at A.C.A. § 24-7-201 et seq.
However, the question remains whether the Board is authorized to organize an advisory or executive committee without clear legislative sanction to do so. Although I harbor some doubts on this issue, I suspect the answer to this question is "yes."
Section 24-7-303 of the Code (Repl. 2000) provides in pertinent part:
 (e)(1) The board shall appoint a professional investment counsel to be investment advisor to the board.
 (2) No investment shall be made by the board until it has received the advice of its investment advisor. Provided, however, if the contemplated investment involves anything other than financial assets, as defined in § 4-8-102(a)(9), then in lieu of seeking advice from its investment advisor, the board shall seek and receive advice from a person having recognized expertise with respect to the type of investment contemplated.
* * *
 (g) The executive director shall have the authority to employ such other professional and clerical services, and to purchase such equipment and supplies, as are required for the proper operation of the system, subject to the approval of the board.
* * *
 (h)(2) All other expenses of the board necessary for the operation of the system shall be paid at such rates and in such amounts as the board shall approve.
At issue is whether the Board is authorized by this or any other applicable legislation to appoint a committee to aid the investment advisor in his deliberations. Absent some directly contrary provision in the ATRS trust, given the terms of A.C.A. § 24-7-303(g) and the adoption of § 8 of Act 151 of 2001, codified at A.C.A. § 24-2-601 et seq. (Supp. 2001), I believe this question should be answered in the affirmative.
The Board's investment authority is set forth at A.C.A. § 24-2-602, which provides:
 (a) The boards of trustees of the State Police Retirement System, the Arkansas Public Employees' Retirement System, the Arkansas Teacher Retirement System, the Arkansas State Highway Employees' Retirement System, and the Arkansas Judicial Retirement System shall have full power to invest and reinvest the moneys of the respective systems and hold, purchase, sell, assign, transfer, or dispose of any of the investments so made as well as the proceeds of the investments and moneys.
 (b) However, the investments and reinvestments shall only be made in accordance with the prudent investor rule set forth in §§ 24-2-610—24-2-619.
Subsection (b) of this statute must be read in conjunction with A.C.A. §24-2-610(b)(1), which provides: "The prudent investor rule, a default rule, may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust." It follows that the provisions of the prudent investor rule will apply unless the trust expressly contains a contrary provision. With respect to the Board's duties in making investments, A.C.A. § 24-2-611 of the Code provides:
 Trustees shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustees shall exercise reasonable care, skill, and caution.
The prudent investor rule recognizes that the Board, in the exercise of its discretion, may find it reasonable to delegate investment decisions to an agent. Specifically, A.C.A. § 24-2-616(b) provides: "Trustees may delegate investment functions to an agent that a prudent trustee of comparable skills could properly delegate as provided in § 24-2-618." The referenced A.C.A. § 24-2-618 provides:
 (a) Trustees may delegate investment and management functions that a prudent trustee of comparable skills could properly delegate under the circumstances. The trustees shall exercise reasonable care, skill, and caution in:
(1) Selecting an agent;
 (2) Establishing the scope and terms of the delegation, consistent with the purposes and terms of the trust; and
 (3) Periodically reviewing the agent's actions in order to monitor the agent's performance and compliance with the terms of the delegation.
 (b) In performing a delegated function, an agent owes a duty to the trust to exercise reasonable care to comply with the terms of the delegation.
 (c) Trustees who complied with the requirements of subsection (a) of this section are not liable to the beneficiaries or to the trust for the decisions or actions of the agent to whom the function was delegated.
 (d) By accepting the delegation of a trust function from the trustees of a trust that is subject to the law of this state, an agent submits to the jurisdiction of the courts of this state.
 (e) Single agent or exclusive agency delegations by the trustees shall be discouraged. Trustees shall delegate investment and management functions to a single agent or an exclusive agency arrangement only after the trustee has determined the exclusive agency arrangement is in the best interest of the trust, has exercised extraordinary care and caution in selecting the exclusive agent, and has arranged to periodically review in detail the agent's actions to monitor the agent's performance and compliance with the terms of the delegation.
In my opinion, various provisions of this statute bear directly on your question: (1) it authorizes the Board to delegate its investment responsibilities; (2) it authorizes the Board to limit the scope of that delegation, presumably including a limitation restricting the delegees to an advisory role; (3) it imposes upon the delegees a duty of reasonable care; (4) it absolves the Board of liability to the beneficiaries or to the trust for the actions of delegees; and (5) it subjects the delegees to the jurisdiction of this state's courts. Considering these provisions together, I believe this statute charges the Committee with potential liability for failure to exercise reasonable care in undertaking its duties.
Given the foregoing standard, I believe a finder of fact would likely conclude that the Board was authorized in creating the Committee unless the Board's charter dictates otherwise. In offering this conclusion, I am not overlooking the fact that A.C.A. §§ 24-7-303 and 24-2-618 both refer to an individual investment advisor, not a committee. Notwithstanding this use of the singular, I simply do not believe the legislature intended to preclude the Board from consulting with more than one individual, particularly given that Committee members receive only nominal consideration for their services. I am reinforced in this conclusion by the fact that A.C.A. § 24-7-303(g) expressly invests the executive director with authority to retain whatever professional services he deems necessary, subject only to Board approval. Moreover, I believe this conclusion would apply regardless of whether the Committee functions in an advisory or a decision-making capacity. Finally, again irrespective of the Committee's actual duties, I believe its members are potentially susceptible to suit, rendering the issue of possible indemnification far from merely academic. Given what I believe is a clear legislative directive that an investment delegee shall be held accountable for any lapses in professional performance, I strongly doubt the Board could agree to indemnify the delegee for any liability. Moreover, applying the prudent-investor rule discussed above, I believe even an advisory committee would be theoretically liable for any lapses in rendering its advice. Finally, given what I consider to be the legislature's clear proscription against indemnifying Committee members, I need not reach the issue of whether such indemnification might be objectionable on constitutional grounds.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh